UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0713 (PLF) |
| ) | |
| FRANKLIN A. OLAITAN ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

      Defendant Franklin A. Olaitan is charged in a ten-count indictment with various fraud and theft offenses relating to an alleged real estate fraud scheme. See Superseding Indictment ("Indictment") [Dkt. No. 5]. A jury trial is scheduled to begin on September 8, 2023. The government has filed a motion seeking to admit evidence of two allegedly fraudulent prior transactions conducted by Mr. Olaitan under Rule 404(b) of the Federal Rules of Evidence to demonstrate Mr. Olaitan's motive, intent, preparation, plan, knowledge, and lack of mistake relating to the charged offenses. See Government's Notice and Motion to Admit Evidence of Uncharged Conduct Pursuant to Federal Rules of Evidence 404(b) ("Gov't Mot.") [Dkt. No. 17]; Government's Reply to Defendant's Opposition to Motion to Admit Evidence of Uncharged Conduct Pursuant to Federal Rules of Evidence 404(b) ("Gov't Reply") [Dkt. No. 43]. Mr. Olaitan opposes the admission of this evidence. See Opposition to Government's Motion to Admit Evidence of Uncharged Conduct Pursuant to Federal Rule of Evidence 404(b) ("Def. Opp.") [Dkt. No. 42].

      The Court heard oral argument on the government's motion on August 2, 2023. In consideration of the parties' written submissions, oral argument, and the relevant legal

authorities, the Court will grant the government's motion. Evidence of Mr. Olaitan's prior fraudulent transactions may be admitted at trial in accordance with Rule 404(b) of the Federal Rules of Evidence.

## I. BACKGROUND

A grand jury returned an indictment against Mr. Olaitan on December 3, 2021, and a superseding indictment on December 10, 2021. The superseding indictment charges Mr. Olaitan with four counts of Wire Fraud in violation of 18 U.S.C. § 1343; two counts of Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 2314; two counts of Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(1); one count of Identity Theft in violation of 18 U.S.C. § 1028(a)(7); and one count of First Degree Fraud in violation of 18 U.S.C. §§ 3221(a), 3222(a)(1). See Indictment at 1.

The grand jury charges Mr. Olaitan with having devised and executed a scheme to take possession of a distressed property using fraud and to resell that property at a profit. See Indictment ¶ 11; Gov't Mot. at 2. The ten-count speaking indictment alleges that Mr. Olaitan controlled two entities: a limited liability company called TNS Title, LLC ("TNS Title), and another limited liability company called 915 Decatur Street, N.W., LLC ("915 Decatur"). See Indictment ¶¶ 2, 3. The indictment explains that Mr. Olaitan used these entities to purchase and resell a distressed residential property on First Street, Northwest, Washington, D.C. ("First Street property") without the knowledge or consent of the property's true owner. Id. ¶¶ 6, 9. The indictment further states that Mr. Olaitan made false and fraudulent representations to complete these transactions, including using the identities of the property owner and a notary without their permission. Id. ¶¶ 7-9. According to the indictment, the fraudulent transactions resulted in losses to the property owner, buyer, and title company. Id. ¶ 9.

2

Specifically, the indictment alleges that in October 2016, Mr. Olaitan generated a false sales contract purporting to sell the First Street property from its genuine owner to 915 Decatur, which Mr. Olaitan controlled. Indictment ¶ 14. It further states that Mr. Olaitan obtained a mortgage for the First Street property from a New Jersey-based lending company and submitted multiple fraudulent documents – including an affidavit purportedly from the property owner, a settlement statement, a tax and recordation form, a deed, and a copy of the property owner's driver's license – to a Maryland-based title company in support of the transaction. Id. ¶¶ 18-21. Based on these representations, the title company filed the false deed with the District of Columbia, paying the associated fees and taxes, and provided Mr. Olaitan with a check made out to the owner of the First Street property for the proceeds of the sale. Id. ¶¶ 23-25. The indictment claims that Mr. Olaitan – using the name and signature of the First Street property's owner – transferred the check to TNS Title and deposited the proceeds of the sale into a bank account that he controlled. Id. ¶¶ 23, 26.

The indictment further claims that shortly after 915 Decatur wrongfully gained ownership of the First Street property, Mr. Olaitan orchestrated a second transaction of the First Street property from 915 Decatur to another entity. Indictment ¶¶ 27-28. The indictment avers that Mr. Olaitan signed and submitted a contract and settlement statement to the same Maryland-based title company that he used in the first transaction, which subsequently filed a second false deed with the District of Columbia and provided 915 Decatur with the sale proceeds in December 2016. Id. ¶¶ 30-31.

## II. LEGAL STANDARD

Under the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1); see United States v. Abou-Khatwa, 40 F.4th 666, 677 (D.C. Cir. 2022). Evidence of prior bad acts may, however, be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2); see United States v. Straker, 800 F.3d 570, 598 (D.C. Cir. 2015). "[I]n this circuit the Rule is viewed as one of inclusion rather than exclusion." United States v. Loza, 764 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing United States v. Bowie, 232 F.3d 923, 929-30 (D.C. Cir. 2000)); see United States v. Williams, 740 F. Supp. 2d 1, 2 (D.D.C. 2010).

The "two-step" analysis for determining admissibility of "bad acts" evidence is well-established in the D.C. Circuit. United States v. Miller, 895 F.2d 1431, 1435 (D.C. Cir. 1990); see United States v. Washington, 969 F.2d 1073, 1080-81 (D.C. Cir. 1992); United States v. Sutton, Crim. No. 21-0598, 2022 WL 17335969, at *3 (D.D.C. Nov. 30, 2022). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether the evidence is probative of a material issue other than character." Huddleston v. United States, 485 U.S. 683, 685 (1988); see United States v. Bowie, 232 F.3d at 930 ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity?").

If prior bad acts evidence is offered for a permissible purpose, then a court must ensure that its probative value is not substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

4

evidence." FED. R. EVID. 403; see United States v. Douglas, 482 F.3d 591, 600 (D.C. Cir. 2007); United States v. Miller, 895 F.2d at 1435. "'Unfair prejudice' means prejudice above and beyond the normal 'harm to the defense' that other crimes evidence inevitably causes." United States v. Ford, Crim. No. 15-0025, 2016 WL 259640, at *2-3 (D.D.C. Jan. 21, 2016) (quoting United States v. Loza, 764 F. Supp. 2d at 58). If the proponent of Rule 404(b) evidence prevails at both steps of the analysis, the evidence should be admitted so long as a reasonable jury could find that the prior bad act did in fact occur. Huddleston v. United States, 485 U.S. at 690. Rule 404(b) evidence is generally admitted "subject to a limiting instruction describing to the jury the limited purpose for which such evidence may be considered." United States v. Sitzmann, 856 F. Supp. 2d 55, 61 (D.D.C. 2012).

### III. DISCUSSION

The government seeks to admit evidence about the two other allegedly fraudulent sales of Washington, D.C. properties that Mr. Olaitan conducted – one on Hobart Place, Northwest ("Hobart Place property"), and the other on Alabama Avenue, Southeast ("Alabama Avenue property"). See Gov't Mot. at 3. The government argues that Mr. Olaitan carried out the fraudulent transactions of the Hobart Place and Alabama Avenue properties "in a similar manner" to how the government alleges Mr. Olaitan fraudulently purchased and sold the First Street property at issue in this case. Id. at 4. Accordingly, the government submits that evidence about the two other properties should be admitted at trial to demonstrate Mr. Olaitan's "motive, intent, preparation, plan, knowledge, and/or absence of mistake or accidence concerning the fraud scheme and related offenses charged in the indictment." Id.

### A. Proffered Evidence of Prior Fraudulent Transactions

The government argues that the Hobart Place and Alabama Avenue transactions are relevant to the charged offenses relating to the First Street property because of the similarities between all three sets of real estate transactions. Mr. Olaitan points out ways in which the three transactions are different from each other, arguing that these differences undermine the government's theory of admissibility. The Court concludes that significant aspects of the Hobart Place and Alabama Avenue transactions are substantially similar to the First Street transactions. The differences between and among the transactions do not take this evidence outside the scope of what can be properly admitted under Rule 404(b).

The government proffers that Mr. Olaitan wrongfully took ownership of the Alabama Avenue property in January 2014 using false documents, including a false driver's license and false deed bearing the false signatures of the property owner and a notary – much like the initial First Street transaction. Gov't Mot. at 4; see Indictment ¶¶ 18-21. The government also asserts that ownership of the Alabama Avenue property was transferred to Mr. Olaitan's company, 915 Decatur, and the original property owner never received the proceeds from this sale – though Mr. Olaitan also did not receive the proceeds from this sale. Gov't Mot. at 4, 5 n.2; cf. Indictment ¶¶ 24, 26 (915 Decatur took ownership of the First Street property and the proceeds from that transaction were deposited into a bank account Mr. Olaitan controlled). The government represented at oral argument that the owner of the Alabama Avenue property will testify at trial that he does not know Mr. Olaitan, that he was not present at the closing, and that he did not sign any of the documents relating to the sale. Mr. Olaitan argues that, even if the Alabama Avenue property owner testifies to those facts at trial, a person who "purported to be" the property owner was "present at the closing with identification;" and "[t]he notary who was present is expected to testify that she [the notary] signed the documents and did not doubt that

6

the person at closing was, in fact, who his driver's license said he was." Def. Opp. at 6-7. Mr. Olaitan also notes that neither he nor anyone else was ever charged with or convicted of any conduct relating to the Alabama Avenue property. Id. at 6.

With respect to the Hobart Place property, the government asserts that Mr. Olaitan wrongfully took possession of the property in November 2015, with the help of the same Maryland-based title company used in the First Street property transactions. Gov't Mot. at 6; Indictment ¶ 16. According to the government, 915 Decatur obtained a loan through the same New Jersey lender that the government alleges helped Mr. Olaitan purchase the First Street property in order to purchase the Hobart Place property. Gov't Mot. at 6; Indictment ¶ 17. The government also claims that the Hobart Place property owner's documents – including a driver's license – that were submitted to the settlement company were false. Gov't Mot. at 7; Indictment ¶ 20 (alleging that Mr. Olaitan provided the title company with a falsified driver's license supposedly belonging to the First Street property owner). And, like the false notary stamp and signature included on the First Street property transaction documents, the government asserts that the notary signature and stamp on the initial Hobart Place transaction documents were also false. Gov't Mot. at 7; Indictment ¶ 19.

The government further claims that Mr. Olaitan received the proceeds from the sale of the Hobart Place property to 915 Decatur, just as he received the proceeds from the sale of the First Street property to 915 Decatur. Gov't Mot. at 6; Indictment ¶ 26. Specifically, the government asserts that Mr. Olaitan opened a joint bank account in his name and the name of the owner of the Hobart Place property; that the proceeds of the initial Hobart Place property sale were placed in this joint account; and that the proceeds were later moved to an account that Mr. Olaitan also controlled. Gov't Mot. at 6. The government further proffers that, like the two First

Street property transactions, the Hobart Place transactions occurred in quick succession. Id.; Indictment ¶¶ 25, 27. The government has not been able to contact the owner or anyone related to the owner of the Hobart Place property, although a person who identified herself as the owner's daughter was present at closing. See Gov't Mot. at 6-7; Def. Opp. at 7. Neither Mr. Olaitan nor any other party was ever charged or convicted in connection with the Hobart Place transactions. Def. Opp. at 7.

The government suggests that, like the First Street property, both the Alabama Avenue property and Hobart Street property were "distressed" properties where "the owners were not in residence." Gov't Mot. at 11. The government argues that Mr. Olaitan "conducted back-to-back transactions for the purported purchase and sale of each of these properties (within weeks of each other)," each time using fraudulent documents and false notary signatures. Id. Furthermore, the government asserts that for all of these transactions, Mr. Olaitan was the "lone individual who had contact with each of the purported (fake) owners," and that the realtors and settlement agents relied on Mr. Olaitan to provide necessary documentation from the owners. Gov't Reply at 7-8.

### B. Non-Propensity Purpose

Rule 404(b) provides an "illustrative" but not "exhaustive" list of non-propensity purposes for which bad acts evidence may be admitted. United States v. Miller, 895 F.2d at 1435. "[I]n practice, Rule 404(b) 'does not prohibit character evidence generally, only that which lacks any purpose but proving character.'" United States v. McGill, 815 F.3d 846, 879 (D.C. Cir. 2016) (quoting United States v. Bowie, 242 F.3d at 930); see United States v. Clarke, 24 F.3d 257, 264 (D.C. Cir. 1994) (evidence must be "probative of some material issue other than character"). "Rule 404(b) evidence will often have . . . multiple utility, showing at once

intent, knowledge, motive, preparation, and the like." United States v. Crowder, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (en banc); see United States v. Straker, 800 F.3d 570, 509 (D.C. Cir. 2015) (uncharged acts were "relevant to establish the defendants' state of mind," and "how those defendants started to work together").

The government suggests a number of non-propensity purposes for the admission of evidence relating to the Hobart Place and Alabama Avenue properties. The government argues that the "similar circumstances" surrounding the two prior properties' transactions – specifically, the use of fraudulent documents to facilitate those transactions – demonstrate Mr. Olaitan's "specific intent to defraud." Gov't Mot. at 12. The government also argues that evidence of Mr. Olaitan's ultimate receipt of the proceeds from the prior transactions demonstrates his motive for the charged offenses, and that the pattern of targeting distressed properties to be sold off in quick succession demonstrates Mr. Olaitan's plan and preparation. Id. The government anticipates that Mr. Olaitan will argue that "he was duped" into participating in the First Street property transactions, and therefore offers evidence of the "two prior real estate transactions, close in time, using similar methods and false documents [to] suggest that [Mr. Olaitan's] conduct was not an accident or mistake." Id. at 13; see Gov't Reply at 6, 9.

Mr. Olaitan disputes the non-propensity purposes put forth by the government and argues that the "broad commonalities" between the previous transactions and First Street property transactions "are not probative evidence of fraud" and do not "directly inform Mr. Olaitan's knowledge or intent." Def. Opp. at 5, 8. Specifically, Mr. Olaitan maintains that the government is offering this evidence for an impermissible purpose: it "asks the Court, and will ask the jury, to assume that Mr. Olaitan knew about the imposters and created or caused to be

9

created the false documents [used in the Hobart Place and Alabama Avenue property transactions], without providing any direct link between Mr. Olaitan and those individuals and documents." Id. at 9. Mr. Olaitan also argues that evidence showing that he benefitted financially from prior transactions "is not indicative of fraud" – any real estate investor would be expected to benefit from his investments, and targeting distressed properties is a legitimate way for someone without significant capital to invest in real estate. Id. at 9-10. Furthermore, Mr. Olaitan argues that, should the Court admit this evidence, he will need to introduce evidence about his "many other real estate transactions to counter the government's assertion" that the Hobart Place and Alabama Avenue examples suggest that the First Street transactions cannot be attributed to mistake or accident. Id. at 13.

The Court agrees with the government that there are multiple permissible purposes for the introduction of this evidence under Rule 404(b). See United States v. Clarke, 24 F.3d at 264; Huddleston v. United States, 485 U.S. at 685 ("motive, opportunity, and knowledge" are permissible non-propensity reasons to admit prior bad acts evidence). As counsel for the government suggested at oral argument, Mr. Olaitan's state of mind is the "crux of this case." Mr. Olaitan's participation in prior distressed real estate transactions is relevant to his state of mind during the charged offenses – evidence of his prior conduct will help the jury determine what Mr. Olaitan knew, should have known, and intended to accomplish during the First Street property transactions. See Gov't Mot. at 12. His prior participation in arguably fraudulent real estate transactions is also relevant to the jury's determination as to whether the charged offenses occurred because of Mr. Olaitan's purposeful conduct rather than because of accident or mistake. Id. at 13.

## C. Rule 403 Balancing

"That evidence withstands scrutiny under Federal Rule of Evidence 404(b) does not mean it must be admitted, however, as it may nonetheless be excludable under Federal Rule of Evidence 403." United States v. Appiah, Crim. No. 19-0361, 2020 WL 3469688, at *7 (D.D.C. June 25, 2020). See United States v. Lavelle, 751 F.2d 1266, 1275 (D.C. Cir. 1985) overruled on other grounds by Huddleston v. United States, 485 U.S. at 690 ("Introducing evidence of prior bad acts for a legitimate purpose . . . does not automatically cleanse the evidence of its unique quality of unfairly prejudicing the rights of the accused."). If "unfair" prejudice would result from the admission of Rule 404(b) evidence, and if that prejudice substantially outweighs the probative value of the evidence, such evidence should be excluded. United States v. Pettiford, 517 F.3d 584, 590 (D.C. Cir. 2008); United States v. Day, 591 F.2d 861, 878 (D.C. Cir. 1978). In addition to unfair prejudice, a court may also exclude prior bad acts evidence if its probative value is substantially outweighed by the risk that such evidence would confuse the issues, mislead the jury, or waste time. FED. R. EVID. 403; United States v. Sutton, Crim. No. 21-0598, 2022 WL 13940371, at *12 (D.D.C. Oct. 23, 2022) (excluding body worn camera video where "the probative value of the videos is substantially outweighed by prejudice and the possibility of confusing the jury and wasting time"); Brown v. District of Columbia, 581 F. Supp. 3d 81, 88 (D.D.C. 2022) (excluding evidence under Rule 403 where its probative value was "limited and [] substantially outweighed by the danger of confusing the issues").

1. Probative Value of the Prior Transactions Evidence

The government argues that evidence of the two prior fraudulent transactions is significantly probative in this case for a variety of reasons – specifically, as the government

11

asserted at oral argument, this evidence is probative of Mr. Olaitan's specific intent, knowledge, and plan. See Gov't Mot. at 12. The government suggests that evidence about the previous two properties helps establish Mr. Olaitan's state of mind – that he planned, prepared, and purposefully engaged in a scheme to take ownership of the First Street property through fraudulent means. Gov't Mot. at 12-13; see e.g., United States v. Sitzmann, 856 F. Supp. 2d at 63. As the government contended at oral argument, the prior transactions evidence makes clear that Mr. Olaitan planned to use a fake driver's license and the same corporate entities to complete the First Street transactions, just as he had done with other properties in the past. In the government's view, the similarities between the previous transactions and the First Street property transactions – combined with the fact that all of the transactions took place between 2014 and 2017 – also suggest that the First Street property transactions were not a result of accident or mistake. Id. at 13; see United States v. Brown, 597 F.3d 399, 404-05 (D.C. Cir. 2010); see also United States v. Douglas, 482 F.3d at 601 ("[T]he probative value of another crime is significant 'when the evidence indicates a close relationship to the event charged.'") (quoting United States v. Cassell, 292 F.3d 788, 795 (D.C. Cir. 2002)).

The Court agrees with the government that evidence regarding the Hobart Place and Alabama Avenue properties is highly probative of Mr. Olaitan's state of mind. See United States v. Abou-Khatwa, 40 F.4th at 678 (in health care fraud trial, evidence that insurance-broker defendant overcharged his clients made it more likely that he provided insurance company with false information and that his representations to the insurance company could not be attributed to mistake); United States v. Miller, 799 F.3d 1097, 1105-06 (D.C. Cir. 2015) (testimony about non-charged instances of fraud were probative of intent where defendant was charged with real estate investment fraud scheme); United States v. Brown, 597 F.3d at 404-05 ("The Rule

404(b) evidence regarding Brown's recent conduct in using fictitious financial documents to obtain things of value . . . . was relevant to Brown's intent by reason of his prior knowledge, motive, and absence of mistake or accident in presenting" fictitious financial documents during the charged offenses); United States v. Iossifov, 45 F.4th 899, 918-19 (6th Cir. 2022) (evidence of defendant's participation in uncharged fraud scheme helped "shed light upon [his] understanding and conscious knowledge" of the fraudulent nature of the transactions for which he was charged); United States v. Cooper, 229 F. Supp. 3d 75, 76 (D.D.C. 2017) (false statements made in an unrelated bankruptcy filings were probative of absence of mistake in trial where defendant was charged with tax fraud).

2. The Probative Value of the Evidence Is Not Substantially Outweighed by Potential Prejudice

Despite the probative value of this evidence, Mr. Olaitan argues that it fails the balancing test under Rule 403. Def. Opp. at 11. First, Mr. Olaitan asserts that admitting evidence of these two prior transactions would "almost inescapably encourage the jury to conclude unfairly that Mr. Olaitan's involvement (even unwittingly) in prior allegedly fraudulent real estate transactions indicates a personal propensity for illicit conduct." Id. at 13; see United States v. Daniels, 770 F.2d 1111, 1116 (D.C. Cir. 1985) ("The exclusion of bad acts evidence is founded . . . on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds.").

Second, Mr. Olaitan suggests that complex prior bad acts evidence "involving, at best, speculation about other crimes" is "particularly problematic." Def. Opp. at 13 (citing United States v. Shelton, 628 F.2d 54, 57 (D.C. Cir. 1980)). Mr. Olaitan maintains that a "diligent jury is likely to be confused and misled by the various transactions and their bearing, if

13

any, on the charged conduct," and that the confusing nature of this evidence substantially outweighs its probative value. Def. Opp. at 12.

Third, Mr. Olaitan argues that admitting evidence about the Hobart Place and Alabama Avenue properties will result in "two mini-trials related to each of those properties" as well as a "broader trial on Mr. Olaitan's other real estate dealings that must, in fairness, be considered in any assessment of his knowledge, plan, or absence of mistake." Def. Opp. at 12. Admitting the government's proffered evidence will "add significant time to the trial itself," Mr. Olaitan contends, because establishing these kinds of real estate transactions might involve testimony from "realtors, title companies, and settlement agents," as well as "financial and documentary" evidence. Id. at 12-13; see United States v. Grey, 891 F.3d 1054, 1060 (D.C. Cir. 2018) ("[T]he similarity of this Rule 404(b) evidence to the charged conduct risk[s] rendering its introduction needlessly cumulative.").

The government responds that the prejudice that could result from admitting evidence about the two other properties is "not unique to this case" but instead is "endemic to all [Rule] 404(b) evidence." Gov't Mot. at 13. The government further asserts that evidence of Mr. Olaitan's prior real estate transactions is not "particularly complex," see Gov't Reply at 13, and that each prior transaction focuses on a "discrete" property that the jury will not confuse with the First Street property. Gov't Reply at 12 (citing United States v. Lavelle, 751 F.2d at 1279). In response to Mr. Olaitan's argument that introduction of Rule 404(b) evidence will result in wasted time by unnecessarily extending the length of trial, the government proffers that it anticipates calling five or fewer witnesses to testify about the two allegedly fraudulent prior transactions, all of whom will give relatively brief testimony. Gov't Reply at 10-11. The government plans to solicit additional testimony about these prior transactions from the same

14

witnesses who will testify about the First Street property. Id. at 10. The government also anticipates introducing evidence for each of the properties that imposters posed as the original property owners, that their signatures were falsified, and that false identification cards were used for each property owner – none of which is "difficult to understand" and all of which is relevant to Mr. Olaitan's knowledge and intent. Id. at 12.

The Court agrees with the government that the probative value of the evidence relating to the Hobart Place and Alabama Avenue properties is not substantially outweighed by unfair prejudice. Despite Mr. Olaitan's assertions that the government's proffered evidence "indicates a personal propensity for illicit conduct," Def. Opp. at 13, the Court is satisfied that – with appropriate limiting instructions – the jury will be able to consider prior-transactions evidence only for legitimate, non-propensity purposes. See United States v. Milligan, No. 21-3075, at *6 (D.C. Cir. Aug. 1, 2023) (slip op.) (limiting instructions can reduce the risk of prejudice that other crimes evidence creates); see also United States v. Clarke, 24 F.3d at 265; United States v. Brown 597 F.3d at 405-06; United States v. Han, 962 F.3d 568, 573 (D.C. Cir. 2020). Evidence of these prior transactions does not suggest a "record of general misbehavior" or a "vague picture of the defendant as someone who deserves punishment, regardless of whether the particular crime was ever committed." United States v. Lavelle, 751 F.2d at 1278. Admission of this evidence will not result in the kind of unfair prejudice that would cause a jury to convict Mr. Olaitan of the instant offenses because of his previous conduct. Rule 403 "does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of unfair prejudice.'" United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998). "Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair." United States v. Cassell, 292 F.3d at 796; see also United States v. Loza, 746 F. Supp. 2d at 58.

The Court also concludes that the risk of confusing the issues does not substantially outweigh the probative value of the prior transactions evidence. The two prior transactions "involved discrete instances of [alleged fraud] that could not easily be confused with the charged offenses." United States v. Lavelle, 751 F.2d at 1278; see United States v. Brown, 597 F.3d at 400 (evidence of defendant's "other uses of fictitious financial documents" was admissible where "those other uses were distinct" from the charged offenses). The Court is confident that a properly instructed jury will be able to discern between evidence relating to the Hobart Place, Alabama Avenue, and First Street properties.

Furthermore, presentation of prior transaction evidence will not "triple the time required for trial," see Def. Opp. at 13, or extend the length of the trial substantially. The government suggests that many of the witnesses who will testify about the First Street transactions can also testify about the other two properties, and thus the government will not require testimony from dozens of additional witnesses to establish its Rule 404(b) evidence. Gov't Reply at 3, 10. The government also proffers that the testimony of the five or fewer witnesses it would call to testify only about the Alabama Avenue and Hobart Place properties will be brief. Id. at 10-11. Accordingly, the government argues, "evidence of the two additional transactions will not overwhelm the evidence related to First Street." Id. at 11. Moreover, even if the government had to spend a good deal of time at trial establishing the Alabama Avenue and Hobart Place transactions, that itself would not be a sufficient reason to exclude such evidence. It is not unusual for a "substantial part of the government's case-in-chief [to] consist[] of Rule 404(b) evidence" where, as here, the outcome of a trial turns on an assessment of the defendant's intent. United States v. Brown, 597 F.3d at 407; see United States v. Linares, 367 F.3d 941, 946 (D.C. Cir. 2004).

To reduce the risk of undue delay or wasted time, see Def. Opp. at 11 (quoting United States v. Aboumoussallem, 726 F.2d 906, 912 (2d Cir. 1984)), the Court can limit the admission of evidence related to the previous real estate transactions if doing so becomes appropriate to prevent the "trial within a trial" that Mr. Olaitan cautions against. See United States v. Han, 962 F.3d at 573 (affirming admission of Rule 404(b) evidence where district court "took exemplary care to insist that testimony on this subject be 'brief' and 'very tailored'" (alteration omitted)); United States v. Straker, 800 F.3d at 591 (affirming admission of Rule 404(b) evidence where district court "barred cumulative evidentiary presentations" and "strictly ration[ed] the trial time allowed for those evidentiary presentations").

Furthermore, courts often determine whether evidence should be excluded under Rule 403 by considering the volume and nature of evidence that has already been admitted at the trial. See, e.g., United States v. Linares, 367 F.3d at 947 (court should not admit Rule 404(b) evidence to prove knowledge where the government's other evidence has sufficiently established knowledge to preclude judgment of acquittal on that element); United States v. Lavelle, 751 F.2d at 1278 (considering "the manner in which the government presented the evidence" when assessing potential prejudice); United States v. Morrow, Crim. No. 04-0355, 2005 WL 3159572, at *7 (D.D.C. Apr. 7, 2005) ("[D]iscussion of the 'uncharged conduct' evidence may well be revisited at trial, given the context and the development of the overall record."). Although the Court has determined that evidence of the Alabama Avenue and Hobart Place properties is admissible, the Court may limit the government's presentation of evidence related to these properties at trial should that become appropriate.

### 3. A Jury Can Reasonably Conclude that the Prior Transactions Occurred

In considering the government's proffer under Rule 404(b) and Rule 403, the Court is not required to make a preliminary determination about the potentially fraudulent nature of the transactions relating to the Hobart Place and Alabama Avenue properties. United States v. Huddleston, 485 U.S. at 689 (holding that "a preliminary finding by the court that the Government has proved the [prior bad] act by a preponderance of the evidence is not called for"). The Court must only decide whether "the jury can reasonably conclude that the act[s] occurred and that the defendant was the actor." Id.

Based on the government's proffer, the Court finds that a jury could reasonably conclude that these prior transactions occurred and that Mr. Olaitan, through 915 Decatur and TNS Title, was party to them. See United States v. Huddleston, 485 U.S. at 689. And, contrary to Mr. Olaitan's argument, the jury will not be asked to "assume" that these prior transactions were fraudulent. See Def. Opp. at 9. Rather, the government will present evidence concerning these transactions, including evidence of falsified documents used to facilitate the transactions. See Gov't Mot. at 7. The jury will be permitted to consider such evidence for the purpose of determining Mr. Olaitan's state of mind during the transactions charged in the indictment and for other relevant purposes under Rule 404(b). See United States v. Huddleston, 485 U.S. at 691-92 (jury may be instructed that "the similar acts evidence is to be considered only for the proper purpose for which it was admitted"); FED. R. EVID. 105 (courts may provide limiting instructions about the purpose for which evidence may be considered). Mr. Olaitan, of course, may attempt to undermine the government's Rule 404(b) evidence at trial – for example, by highlighting the differences between the transactions, explaining Mr. Olaitan's limited role in the transactions, and questioning the fraudulent nature of the documents the government relies on.

Mr. Olaitan argues that, if the government is permitted to introduce evidence about the Alabama Avenue and Hobart Place properties, he should be permitted to present reasonable counter evidence about his other, non-fraudulent real estate dealings. See Def. Opp. at 13. The government maintains that such evidence would be irrelevant. Gov't Reply at 13 n.10. At oral argument, the government asserted that admitting evidence of Mr. Olaitan's prior non-fraudulent real estate transactions would be equivalent to admitting evidence that an alleged bank robber on several occasions withdrew money from his bank account without threatening any tellers.

The Court declines to consider Mr. Olaitan's argument at this time. Mr. Olaitan may submit written briefing on this issue, providing relevant legal authority and facts about Mr. Olaitan's broader real estate portfolio, so that the Court is better equipped to decide this question. In doing so, he should address Rules 404(a)(2)(A) and 405 of the Federal Rules of Evidence, which were raised during oral argument.

For the foregoing reasons, it is hereby

ORDERED that the Government's Notice and Motion to Admit Evidence of Uncharged Conduct Pursuant to Federal Rules of Evidence 404(b) [Dkt. No. 17] is GRANTED.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 8/4/23