IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) CRIMINAL NO. 21-cr-713 (PLF) |
| FRANKLIN OLAITAN, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

COMES NOW, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and provides this Supplemental Memorandum in Aid of Sentencing regarding restitution and respectfully responds to defendant's Supplemental Memorandum in Aid of Sentencing (ECF No. 89). Under the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. § 3663A, the Court must order defendant to pay restitution to all victims for their actual loss, which totaled $755,000. In addition, there is no procedural basis nor factual reason for the Court to revisit its advisory U.S. Guidelines' ("U.S.S.G.") calculation or change the sentence the Court previously imposed upon defendant.  *See* ECF No. 76 ("Judgment and Commitment Order").

### RELEVANT FACTS

On August 15, 2023, defendant Franklin Olaitan ("defendant" or "Olaitan") entered a guilty plea to count one of the Superseding Indictment charging a wire fraud scheme, in violation of 18 U.S.C. § 1343. *See* ECF Nos. 5 ("Superseding Indictment"), 54 ("Plea Agreement"). The Statement of Offense sets forth defendant's criminal activity and his scheme to defraud and to obtain money from a number of victims, including but not limited to Bridget Fordham ("Ms.

Fordham"), the original owner of a residential property located on First Street N.W., Washington, D.C. (the "property"), and the subsequent buyer of the property, Claremont Management, LLC ("Claremont"), an LLC owned by Joseph Asamoah ("Mr Asamoah") and his wife. *See* ECF No. 55 ("Statement of Offense") to purchase the First Street property. the subsequent buyer of the property, which was owned by. Defendant falsely represented to the settlement company, the D.C. Recorder of Deeds, Claremont, and others that his limited liability company, 915 Decatur Street N.W., LLC ("915 Decatur"), bought the First Street property from Ms. Fordham – a property neither defendant nor his company ever owned. *Id*. Defendant also convinced the settlement company to provide him with the purported owner's sale proceeds, $14,748.52, from the first false sale of the property. *Id*. ¶¶ 21, 24. Defendant obtained additional fraud proceeds when he sold the First Street property for $565,912.19 to Claremont. *Id*., at ¶ 27. As a result, and as set forth in the plea agreement, defendant agreed to restitution in the amount of at least the total of those two amounts – $580,660.73.[1] *Id*. ¶ 11.

Prior to the Court's imposition of sentence, the government and defendant filed Memoranda in Aid of Sentencing in which there was extensive factual and legal analysis of the applicable U.S. Sentencing Guidelines, including the applicability of the enhancement for "substantial financial hardship" to one or more victims as set forth in U.S.S.G. § 2B1.1(b)(2)(A)(iii).[2] *See* ECF Nos. 64, 70, and 73. On February 16, 2024, the Court imposed

---

[1] This initial agreed upon restitution figure of $580,660.73, was a combination of the amount that the defendant illegally received from the closing of the first fraudulent sale of the First Street property ($14,748.52), purportedly between the owner and 915 Decatur and what Claremont paid ($565,912.19) for the First Street property in the second false sale of the property by 915 Decatur to Claremont. *See* ECF No. 55, ¶¶ 24, 27.

[2] The applicability of U.S.S.G. § 2B1.1(b)(2)(A)(iii) was also argued at the sentencing hearing.

2

sentence on Mr. Olaitan – a 40-month term of imprisonment and 36 months of supervised release, and a preliminary restitution amount of $580,660.73. *See* ECF No. 76. Pursuant to 18 U.S.C. § 3664(d)(5), the Court withheld judgment as to exact amount of restitution and to whom it should be paid because of the pending civil suit in Superior Court, *Bridget Fordham v. 915 Decatur Street N.W., LLC, et al.*, Case No. 2017 CA 7297 R (RP). *Id., see also* ECF No. 64 at 19-20. The Court also entered an order of forfeiture in the amount of $111,159.38.[3] *See* ECF No. 75.

After almost six years of civil litigation, on August 28, 2024, the parties to the civil suit, except for Mr. Olaitan and his limited liability company, 915 Decatur, entered into a civil settlement agreement and moved the Court to dismiss the various claims amongst those particular parties.[4] On August 28, 2024, the Superior Court granted the settling parties' motion to dismiss the claims amongst them, leaving the claims against Mr. Olaitan and 915 Decatur LLC pending. *See* Exhibit No. B. On September 9, 2024, Mr. Olaitan filed an Opposition to Claremont's Motion for Summary Judgment and a Cross-Motion for Summary Judgment. On September 23, 2024, Claremont filed a Reply and Opposition. On November 15, 2024, a hearing was held on the summary judgment motions, and it is the government's understanding that the Superior Court granted Claremont's Motion for Summary Judgment as to liability and denied

---

[3] On or about March 20, 2024, defendant paid to the U.S. Marshal's Service ("USMS") the $111,159.38 criminal forfeiture money judgment. *See* ECF No. 78, ¶ 2. Those funds are held by the USMS until it is provided directions by the Money Laundering and Asset Recover Section of the United States Department of Justice ("MLARS") regarding its disposition. *See* ECF No. 54 at ¶ 12(g).

[4] At the restitution hearing, the government will move to file the settlement agreement and other exhibits under seal.

Olaitan's Cross-Motion for Summary Judgment. The Superior Court has yet to decide damages and a hearing is scheduled for December 13, 2024.

Pursuant to the civil settlement agreement and as a direct result of defendant's criminal actions stealing her property, Ms. Fordham received $755,000 for its loss from the other victims (defendant has paid nothing to the victims in the civil matter). In addition, as part of the settlement between the parties (other than defendant), Claremont received title to the First Street property.[5] Three different victims contributed to the $755,000 to Ms. Fordham – two insurance companies (The Security Title Guarantee Corporation of Baltimore, and Wesco Insurance Company/AmTrust Financial Company) who directly provided funds to Ms. Fordham on behalf of civil defendants' Industrial Bank, Sheridan Title, and Claremont, and Mr. Asamoah who contributed $155,000 of the settlement funds through a loan from The Security Title Guarantee Corporation of Baltimore. Therefore, the government requests that the Court amend the restitution order to reflect the actual loss amount of $755,000 to the victims who paid Ms. Fordham, and who were directly and proximately harmed as a result of defendant's fraudulent actions.

On November 20, 2024, defendant filed a supplemental Memorandum in Aid of Sentencing in which defendant agreed with and did not oppose the Court's imposition of a restitution order in the amount of $600,000 to the two insurance company victims. *See* ECF No. 89 at 1. Defendant, however, incorrectly argues that he should be relieved from the responsibility of paying restitution for the additional $155,000 actually spent by the victims (Mr. Asamoah and The Security Title Guarantee Corporation of Baltimore) to compensate the original

---

[5] Pursuant to settlement agreement, all parties were responsible for their own attorney's fees.

victim (Ms. Fordham) because Mr. Asamoah's company retained title to the property in the settlement. Defendant's argument should be summarily denied.

## ARGUMENTS AND AUTHORITIES

### A. MVRA Requires Defendant to Pay $755,000 in Restitution to Victims

'Restitution is "essentially compensatory," not punitive: it simply "restore[s] a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." *United States v. Birkundi*, 926 F.3d 761, 791-2 (D.C. Cir. 2019) citing *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)). The Mandatory Victim's Restitution Act ("MVRA") requires "the District Court to order restitution if the defendant is convicted of an offense in which an identifiable victim or victims has suffered a pecuniary loss. *See* 18 §§ 3663A (a)(1), (a)(2), (c)(1)(B). A wire fraud scheme falls within the mandatory restitution requirement of the MVRA because it is "an offense against property[.]" *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). Indeed, "the court shall order restitution to each victim in the *full amount of each victim's losses* as determined by the court . . ." 18 U.S.C. § 36634(f)(1)(A) (emphasis added).[6]

If there is a dispute regarding the amount of restitution, the government bears the burden of demonstrating by a preponderance of the evidence the amount of a victim's losses. *See* 18 U.S.C. § 3664(e); *United States v. Fair, supra*., 699 F.3d at 513; *United States v. Williams*, 946 F.Supp.2d 112, 117 (D.D.C. 2013). The MVRA defines "victim" as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

---

[6] Some victim losses, such as attorney's fees or investigative fees, are not recoverable under the MVRA and cannot be ordered as restitution.

Section 3663A(a)(2). Thus, the government must prove that the defendant directly and proximately harmed the victim(s). The amount of the actual loss to the victim(s) does not need to be proven with exacting certitude. Indeed,

> the amount of restitution need not be "proven with exactitude;" rather "the district court's charge is to estimate, based upon the facts in the record, the amount of the victim's loss with some reasonable certainty." *In re Sealed Case*, 702 F.3d at 66 (cleaned up). While "[t]he Court may not order restitution for losses that are unsubstantiated or speculative," *United States v. Williams*, 946 F. Supp. 2d 112, 117 (D.D.C. 2013) (citing *United States v. Cienfuegos,* 462 F.3d 1160, 1168-69 (9th Cir. 2006)), the relevant question is whether "the basis for reasonable approximation is at hand." *United States v. Boutros*, No. 20-cr-82, 2020 WL 6683064, at *2 (D.D.C. Nov. 12, 2020) (quoting *United States v. Savoie,* 985 F.2d 612, 617 (1st Cir. 1993)); *see also United States v. Fair,* 699 F.3d 508, 515 (D.C. Cir. 2012) (requiring an "evidentiary basis" on which to calculate restitution).

*United States v. Wilkins*, 680 F.Supp.3d 8, 11 (D.D.C. 2023). The Court's "charge is to 'estimate, based upon facts in the record, the amount of [the] victim's loss with reasonable certainty.'" *Williams, supra,* at 117 (quoting *United States v. Monzel*, 641 F.3d at 540)."[7]

Here, it is a fact that three victims paid $755,000 to the original victim, Ms. Fordham, to settle their claims against each other as a result of defendant's scheme to defraud and his theft and sale of the First Street property. The $755,000 in settlement funds were paid and are actual losses that were directly and proximately caused by the defendant's criminal activity in this matter. There is no dispute that the settlement funds are actual losses to the victims because defendant agrees that the Court should impose restitution in the amount of at least $600,000. Defendant, however, objects to the Court imposing restitution for the $155,000 that was paid to Ms. Fordham because it was paid through a loan to Mr. Asamoah provided by The Security Title

---

[7] *United States v. Monzel,* 641 F.3d 528, 540 (D.C. Cir. 2011).

Guarantee Corporation of Baltimore and because Claremont retained title to the property. *See* ECF No. 89 at 4-5. The actual loss was the entire settlement amount of $755,000 – the amount the victims spent to right defendant's wrong. Under the MVRA defendant must be held responsible for paying the actual loss amount to make the victims whole.

The only argument defendant asserts against the Court requiring full restitution in this matter is his speculative chain of inferences that because Claremont was able to quiet the title to the property in the settlement, Mr. Asamoah is in a "better financial position today than if he had never purchased the property from Mr. Olaitain." *See* ECF No. 89 at 4. This argument is factually and legally without merit. First, defendant completely ignores the actual loss figure established by the settlement agreement between the parties in the civil suit – specifically that Ms. Fordham was paid $755,000 by the victims to make her whole from defendant's theft and to allow title to remain with Claremont after the defendant's deception. Claremont's retention of the property does not alleviate defendant's responsibility from paying the actual pecuniary loss of $155,000, which Mr. Asamoah (and The Security Title Guarantee Corporation of Baltimore) paid in addition to the other $600,000 in settlement funds.[8]

Here, Claremont got the property back and there has been no sale of the property to date. The MVRA does not require the Court, as defendant suggests, to speculate how much Claremont might eventually receive if, and when, it decides to sell the property. Defendant's suggestion that the Court consider the statutory provisions for calculating the loss amount relating to lost or damaged property under 18 U.S.C. § 3663A(b)(1)(B), is misguided. *See* ECF No. 89 at 4.

---

[8] Even though The Security Title Guarantee Corporation of Baltimore paid the $155,000 directly to Ms. Fordham, Mr. Asamoah is obligated to pay the insurance company the $155,000 with interest and has posted another property as collateral for that loan.

Section 3663A(b)(1)(B) does not come into consideration unless the property is not returnable to the victim or is damaged. "If return of the property under subparagraph (A) *is impossible, impracticable, or inadequate*, pay an amount equal to --- . . ." (emphasis added). Section 3663A(b)(1)(B). Here, the property was returned to Claremont by the settlement agreement. Therefore, there is no basis for the Court to consider the loss calculations under 18 U.S.C. § 3663A(b)(1)(B) regarding the value of property to determine what restitution is owed to Mr. Asamoah for the property. The MVRA does require, however, that the Court award restitution for the amount that was actually spent by the victims - $755,000.

Even assuming *arguendo* that the Court should consider 18 U.S.C. § 3663A(b)(1)(B), to somehow negate the $155,000 that Mr. Asamoah paid in settlement by giving defendant credit for the potential increase in the value of the property, those calculations are wholly speculative. The facts show that approximately six years ago, Claremont paid $565,912.19 for the property, then spent over $600,000 on renovations, and at least over $100,000 on holding costs (not including the first six-seven months) over the years, and the $155,000 to settle the civil matter. Claremont has been unable to sell the property or invest the money from the sale of the property into any other investments during that six-year period, so the Court will never know the true loss associated with the stagnation of the sale of the property. Indeed, because defendant clouded the title to the property, Claremont was unable to go through with a negotiated sale of the property and was required to continue to pay taxes and other costs over the past six years.

Defendant's claim that Mr. Asamoah is in the same financial position or better off financially because of the delay in civil and criminal matters is contrary to logic. In October 2017, Claremont had a buyer for the First Street property for $1.3 million, the funds of which could have been reinvested during the following six-years. In addition, Claremont and the other

8

victims have had to spend considerable attorney's fees during the pendency of the civil matter for which they cannot be compensated for in this criminal matter. *See* Victim Impact Statements. Thus, defendant's suggestion that the victims are financially better off as a result of his fraud scheme is incredulous. Thus, the government requests that the Court impose full restitution of $755,000 for the victims' actual losses resulting from defendant's criminal conduct.

### B. There is No Basis to Amend Defendant's Term of Incarceration

Defendant requests that the Court resentence defendant to a lower term of incarceration based upon "newly available evidence." *See* ECF No. 89 at 6-7. Specifically, defendant claims that because the victims have now settled their claims against each other in the civil matter, neither Ms. Fordham nor Mr. Asamoah (Claremont), have suffered a "substantial financial hardship" or any loss to their investments under U.S.S.G. § 2B1.1(b)(2)(A)(iii). *Id.* at 6. As a result, defendant urges the Court to revisit its calculations under the advisory U.S. Sentencing Guidelines relating to U.S.S.G. § 2B1.1(b)(2)(A)(iii), and whether it applies to defendant's conduct and caused "substantial financial hardship" to one or more victims. Defendant alleges that the "substantial financial hardship" enhancement does not apply to his conduct and that he is entitled to have the advisory guideline calculation reduced to a level 21 (37-46) months, rather than a level 23 (46-57 months) and requests resentencing. *Id.* at 7. There is no basis for the Court to consider defendant's request to revisit this issue or to lower defendant's term of incarceration imposed in the Judgment and Commitment Order based upon the civil settlement.

As an initial matter, defendant provides no legal authority which would allow the Court to resentence defendant. Moreover, the civil settlement is not "newly available evidence." The issue of the applicability of U.S.S.G. § 2B1.1(b)(2)(A)(iii), the "substantial financial hardship" enhancement, was fully briefed in the sentencing memoranda and the parties litigated the issue

9

before the Court imposed defendant's sentence.[9]  *See* ECF Nos. 64, 70, 73.  Indeed, as defendant mentioned, "Mr. Olaitan's counsel argued that the outcome of Ms. Fordham's civil case could result in neither Ms. Fordham nor Mr. Asamoah suffering a substantial financial hardship" and that "the Court did not know the outcome of the civil settlement at the time of sentencing." *Id*. at 6.  Knowing that the civil case was not completed, the Court was able to find that defendant's conduct caused "significant financial hardship" for both Ms. Fordham and Mr. Asamoah based upon the evidence before it at the sentencing hearing, including the sentencing memoranda, the victim impact statements, and statements of Mr. Asamoah in Court.

Defendant appears to conflate U.S.S.G. §2B1.1, the guideline for calculating the actual/intended loss amount for the base offense level, with U.S.S.G. § 2B1.1(b)(2)(A)(iii), a two-level enhancement based upon a defendant's conduct causing "substantial financial harm" to one or more victims.  They are not the same.  The enhancement is meant to reflect the severity of the defendant's conduct – not the actual or intended loss. Moreover, the actual/intended loss figures used in §2B1.1 is not necessarily equal to a determination of whether defendant's criminal actions caused "significant financial hardship" to the victims. At the sentencing hearing, the Court considered how defendant's actions effected each individual victim. The Court noted that defendant deprived Ms. Fordham of her most significant asset and investment for over six years. As the Court is aware, temporary financial loss may constitute significant hardship under the Guidelines when the funds are unavailable to the victim.  *See United States v. Aderinoye*, 33 F.4th 751, 757 (5th Cir. 2020).  Ms. Fordham was only recently compensated for the loss of her property by settlement with the other victims – not through any act or payment of the defendant.

---

[9] The government incorporates herein as if fully rewritten, its sentencing memoranda regarding its analysis of whether defendant caused significant financial hardship to victims and the applicability of U.S.S.G. § 2B1.1(b)(2)(A)(iii). See ECF Nos. 64, 73.

Similarly, for more than six years, defendant has caused Mr. Asamoah "substantial financial hardship" by preventing Mr. Asamoah from using his investment and funds that were put into the property – over $1.1 million. Because of defendant's conduct, Mr. Asamoah has been unable to (1) invest the $1.1 million he spent on purchasing and renovating the property on some other investment; (2) to sell the property; (3) be free from litigating the civil suit;[10] and (4) to recoup the over $100,000 of net costs. As Mr. Asamoah told the Court at the sentencing hearing, defendant's criminal actions have caused him and his wife significant financial hardships and a six-year loss of their investment.

In any event, if the Court reconsiders the sentencing guideline calculation and determines that defendant's conduct subjected neither Ms. Fordham nor Mr. Asamoah to "significant financial hardship" under U.S.S.G. § 2B1.1(b)(2)(A)(iii) and reduces defendant's criminal conduct to a level 21 (37-46 months), the 40-months term of incarceration already imposed falls squarely within that guideline range. Therefore, there is no basis to resentence defendant.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:   /s/ *Diane G. Lucas*
Diane G. Lucas D.C. Bar No. 443610
Christopher Howland DE Bar No. 5556
Assistant United States Attorneys
Fraud, Public Corruption, & Civil Rights Section
601 D Street, N.W.
Washington, D.C. 20530
202-252-7724 (Lucas)
202-252-7106 (Howland)
Diane.Lucas@usdoj.gov
Christopher.Howland@usdoj.gov

---

[10] As part of the settlement the parties are required to pay their own attorney's fees.